# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## JOHNNY WAYNE BEARD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 6200      Joseph H. Walker, Judge**

---

**No. W2011-00800-CCA-R3-PC  - Filed March 20, 2012**

---

The petitioner, Johnny Wayne Beard, appeals the denial of his petition for post-conviction relief from his rape of a child conviction, arguing he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea. After review, we affirm the lower court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Andrea D. Sipes, Jackson, Tennessee (on appeal); and Mark E. Davidson, Covington, Tennessee (at hearing), for the appellant, Johnny Wayne Beard.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On July 9, 2009, the petitioner pled guilty to rape of a child in exchange for a sentence of twenty-five years in the Department of Correction. At the guilty plea hearing, the prosecutor recited the following factual basis for the plea:

> This is Case No. 6200, _State v. Johnny Wayne Beard_. [The petitioner], through his attorney, [counsel] with the Public Defender's Office, has come to a resolution in this case. [The petitioner] was charged in a one count

indictment of rape of a child in Docket No. 6200. [The petitioner] is going to enter a guilty plea. . . . Upon speaking with the victim and looking at the forensic interview, there may be other counts from Lauderdale County and Tipton County. As part of his guilty plea with respect to this victim, the State has agreed not to indict or prosecute any other count with respect to this victim upon his guilty plea to this one count of rape of a child. The State knows of and believes that there's only one sentence possible on a case like this. It's 25 years, 100 percent per the statute.

Had the State gone to trial, they would [have] put on evidence to the effect that on October 8, 2008, [the petitioner] was babysitting his children at their mother's home at 316 Boswell Road in Burlison, Tennessee. The mother was out of town doing a job somewhere else and [the petitioner] had his children that night. [The petitioner], in his confession or in his statement to the police, admits to drinking that day and does admit to some sexual contact with his daughter where he called it a kiss between her legs on her vagina.

The daughter . . . has met with our office and would testify that there was sexual penetration during that with his mouth on her vagina. Her brother, his son, also talked to our office and would be able to testify. Though he didn't testify or was able to say anything in his forensic interview, he did talk to . . . myself and would testify that he couldn't describe the activity but his dad was between his sister's legs, that he hit him because he was doing something bad and ultimately, the son is the one who told the mom the next day. Like I said earlier, . . . this was some sort of ongoing activity which [the petitioner] will not be prosecuted on, on his plea to this one count of rape of a child.

[Counsel] from the Public Defender's Office would like to make a copy of the taped confession by Detective Wassel part of the record and has a copy here and I'll submit it now as part of the record of this hearing if the Court will allow and we'll pass that up now. This is a copy that the State received from the Sheriff's Office. This is the copy that was provided to the Public Defender. The State would have called Detective Wassel to put on the evidence of the confession by the [petitioner] . . ., would have called the victim, his daughter -- her initials in the indictment are "JAB". Her date of birth was 04/28/98. [The petitioner]'s date of birth is 06/09/74 which would make this a rape of a child with his age being way in excess of 18 years old and hers being less than 13 years old at the time of the crime.

-2-

The State would also call the victim to talk about the contact, would have also called her brother who was a witness to the contact and ultimately told the mother and this [is] how we ended up in court today.

The petitioner filed a *pro se* petition for post-conviction relief on May 14, 2010, alleging that his confession was coerced, that counsel was ineffective, and that his guilty plea was not knowing and voluntary. Counsel was appointed, and an evidentiary hearing was conducted on the petition. At the hearing, the petitioner testified that he was pressured into pleading guilty by counsel. He stated that he first met with counsel on January 20 after he had been charged with aggravated sexual battery, and counsel "talked [him] into waiving [his] preliminary [hearing]" by telling him that he would "be waiting in the back of the jail" six months later if he did not. The petitioner understood the proof against him to consist of his "statement [to police] saying [he] kissed [his] daughter between the legs."

The petitioner testified that he was coerced into making the statement because he was drunk and tired from working all day, and the detectives talked to him for three hours. He said that he had drunk "six 50-milliliter shots of vodka" when he talked to the police and that he did not understand what was going on. He admitted an accidental touching of his daughter but insisted she had her clothes on. However, he and counsel never talked about his confession or about the proof the State might have against him. Counsel also never had any conversation with him about suppressing his statement, but he recalled that counsel told him "it wouldn't do any good" to file a motion to suppress. The petitioner acknowledged, however, that counsel evidently filed a motion to suppress.

The petitioner testified that, at the time of his statement to police, he was taking Prozac for severe depression and slight schizophrenia. He explained that the Prozac combined with alcohol caused him to have "mental distortion, confusion, [and] lack of concentration." However, he never discussed his being on medication and under the influence with counsel because "[he] never had a chance to bring it up . . . [and] [counsel] never asked." Counsel never asked him if he suffered from any mental health problems. The petitioner said that, during the time he was incarcerated prior to entering the plea, he was taking "Elavil mixed with Prozac and Amitriptyline."

The petitioner recalled that counsel brought him an offer from the State for eight years at eighty-five percent based on the aggravated sexual battery charge, but the petitioner told counsel that he was innocent. The petitioner thought he would be released if he rejected the offer. When he next talked to counsel, counsel informed him that he had been charged with rape of a child and that he "would be getting at least 50 years if [he] didn't take the 25-year plea." Counsel had not informed him, when he rejected the eight-year offer, that he might be indicted for rape of a child.

-3-

The petitioner testified that he met with counsel for about thirty minutes to discuss the State's plea offer on the rape of a child charge, and he decided later that day to take the offer. He had been in jail for seven months at that point, experiencing "harsh" conditions and cramped quarters, and was "confused" and did not know what his options were. He and counsel had had no discussions about going to trial or what his possible defenses might be.

The petitioner testified that, when he actually entered his plea, he did not understand what was going on due to the medications he was taking that caused him to "see demons[.]" However, he did not report this to counsel, and counsel did not ask him if he was on any medication. He said that he pled guilty because he felt he had no other option in that he would otherwise face a fifty-year sentence.

On cross-examination, the petitioner testified that he had wanted to go to trial and only pled guilty after he was told he faced a fifty-year sentence. Asked how his case would have changed had he not waived his preliminary hearing, the petitioner said that he did not know. The petitioner said that he never mentioned to counsel his being drunk and on medication when he confessed to the police, explaining that he thought it was the attorney's job to ask all the pertinent questions. He insisted that he knew nothing about the suppression motion and did not recall discussion of such prior to entering his plea. The petitioner admitted that the transcript of the plea hearing showed that he was advised of his rights and informed the court that he was satisfied with counsel's representation.

The petitioner admitted that he knew the original allegation about his crime was reported by his five-year-old son and that the police "probably" talked to the victim as well. However, he never asked counsel about what either of them may have told the police. The petitioner denied being warned when rejecting the eight-year offer that the State would upgrade the charge to rape of a child. The petitioner said that he was not aware that the police were investigating an additional charge against him in Lauderdale County. He admitted that he "wish[ed] [he] had [taken] the eight [year offer]."

Counsel testified that the petitioner was originally charged with aggravated sexual battery, but was then charged with rape of a child. Counsel filed basic pretrial motions, as well as a motion to suppress the petitioner's statement to police. He intended to try and suppress the petitioner's statement based on his review of the video interrogation of the petitioner in which the officers stated on two occasions that they smelled alcohol and asked the petitioner if he had been drinking. Counsel believed that there was "[s]ome chance" of success on the motion, which would have meant that the State's case would have relied solely on the victim's testimony and the corroborating testimony of her brother. Counsel did not personally attempt to interview the victim, but his investigator had tried and been denied permission by the victim's mother.

-4-

Counsel testified that he discussed the suppression motion with the petitioner and his concerns that the petitioner was under the influence during the interrogation. Counsel informed the petitioner that the "case against us looked a lot worse" if they were unsuccessful on the motion to suppress. Prior to the suppression hearing, the petitioner informed counsel that he wanted to accept the State's offer. The offer the petitioner accepted was essentially the same sentence he would have received had he gone to trial and lost, but the State provided that it would not indict the petitioner on an additional charge of rape of a child in Lauderdale County if he accepted the plea. Counsel was concerned that the petitioner could be exposed to consecutive sentencing if he rejected the plea and was convicted on additional charges. Counsel stated that there was no guarantee the State would have kept the offer on the table had they been unsuccessful at the suppression hearing. Counsel explained the options to the petitioner and advised him that, in his opinion, it would be best to hear the motion to suppress before deciding, but he also told the petitioner that it was his decision to make as to whether he accepted the plea.

Counsel was aware that the petitioner was taking an antidepressant, but he did not have a mental evaluation performed. Counsel did not know if the petitioner had been on medication in addition to drinking at the time of his confession. Counsel believed that the main issue was whether the police had reason to know that the petitioner was impaired when they were interrogating him. Counsel did not know that the medication the petitioner was taking caused him to hallucinate.

On cross-examination, counsel testified that he met with the petitioner two or three times during the period the case was in general sessions court and discussed with him the proof he knew about at that time, including the petitioner's confession. The petitioner was offered an eight-year sentence on the original aggravated sexual battery charge, which counsel explained to the petitioner. Counsel also explained to the petitioner that he faced the possibility that the charge would be upgraded to rape because penetration could be established by mouth to genital contact. Counsel said that any testimony alleging he did not discuss the motion to suppress with the petitioner, was not aware that the petitioner was taking Prozac, and was not aware of the petitioner's concerns about being under the influence of alcohol or drugs when he gave his confession, was contrary to his recollection.

Counsel testified that he met in order to discuss the motion to suppress with the petitioner two days before the petitioner ultimately pled guilty. Counsel acknowledged that the suppression motion he filed was "bare bones" but explained that was his strategy as he did not see a "point in pre-warning them where [he] was going." Counsel had conducted research to support his arguments and was planning to call the two officers to testify if the State did not. Counsel said that it was the petitioner's idea to plead guilty instead of proceeding on the motion to suppress and that he appeared to be mentally coherent and

aware of the evidence against him. Counsel recalled that the petitioner told him that "he didn't want to put his daughter through testimony." In addition to the times they met when the case was in general sessions court, counsel met with the petitioner another three or four times during the period the case was in criminal court.

Following the conclusion of the evidentiary hearing, the post-conviction court entered an order denying relief, finding that the petitioner understood the significance and consequences of his plea and was not coerced and that he had not shown any deficiencies in counsel's performance or that he was prejudiced.

## ANALYSIS

On appeal, the petitioner argues that counsel rendered ineffective assistance, which caused him to enter an unknowing and involuntary plea. Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### I. Ineffective Assistance of Counsel

The petitioner argues that counsel rendered ineffective assistance in failing to investigate the extent of his intoxication when he made the statements to law enforcement; advising him to plead guilty prior to the suppression hearing; failing to investigate his history of mental illness; and failing to investigate the circumstances of the indictment and allegations surrounding the second offense of rape in Lauderdale County.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. Amend. VI; Tenn.

Const. art. I, § 9. To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

As to the petitioner's assertion that counsel failed to investigate the extent of his intoxication when he gave his statement to police and advised him to plead guilty prior to the suppression hearing, the post-conviction court found that the petitioner admitted that he did not tell counsel he was intoxicated. Instead, counsel filed the suppression motion based on what he saw on the video of the interrogation. The court found that the petitioner wanted

to plead and not go forward on the motion to suppress. The court lastly found that the petitioner failed to make any showing that he would have been successful at the suppression hearing.

The record supports these findings by the post-conviction court. Counsel testified that he discussed the suppression motion with the petitioner and his concerns that the petitioner was under the influence during the interrogation. Counsel informed the petitioner that their case would be much weaker if they were unsuccessful on the motion to suppress. Counsel explained the options to the petitioner and advised him that, in his opinion, it would be best to hear the motion to suppress before deciding whether to accept the State's offer. However, he also told the petitioner that it was his decision to make as to whether he accepted the plea. The petitioner informed counsel that he wanted to accept the State's offer prior to the suppression hearing. The post-conviction court implicitly accredited counsel's testimony. Accordingly, we conclude that the petitioner has failed to prove that counsel performed deficiently in this regard.

With regard to the petitioner's assertion that counsel failed to investigate his history of mental illness and the circumstances of the indictment and allegations surrounding the second offense of rape in Lauderdale County, the post-conviction court found that the petitioner failed to show in what way counsel failed to investigate. The record supports this finding by the post-conviction court. The only proof that the petitioner experienced any side-effects from his medication came from his own assertion at the evidentiary hearing. However, counsel, although aware that the petitioner was taking an antidepressant medication, testified that he was not informed of the petitioner's allegation that the medication he was taking caused him to hallucinate. We cannot conclude that the petitioner has shown any deficiency in counsel's failure to investigate his mental health issues when he did not inform counsel of such. Moreover, the petitioner has not shown prejudice as he offered no proof, such as his medical records or the results of a psychological evaluation, that he was, as he claimed, "incompetent to assist in his own defense."

As to the alleged failure to investigate the circumstances of the indictment and allegations surrounding the second offense, we note that counsel testified that his investigator attempted to interview the victim but was denied permission by the victim's mother. In any event, the petitioner failed to offer any evidence at the evidentiary hearing that would call into question the validity of the victim's allegations and has therefore failed to show how he was prejudiced by any failure to investigate on counsel's part. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

## II. Unknowing and Involuntary Plea

The petitioner also argues that counsel's ineffectiveness caused him to enter an unknowing and involuntary plea. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

As to this issue, the post-conviction court found that the petitioner understood the significance and consequences of his plea and that his decision was not coerced. At the evidentiary hearing, counsel testified that it was the petitioner's idea to plead guilty instead of proceeding to the motion to suppress and that the petitioner was aware of the evidence against him. Counsel said that the petitioner told him that "he didn't want to put his daughter through testimony." The transcript from the plea colloquy shows that the petitioner affirmed to the court that he understood what he was doing, had been apprised of his right to a trial and ramifications of pleading guilty, that he was satisfied with counsel's representation, had enough time to meet with counsel to discuss the case and any defenses to the charge, and that he was pleading guilty because he was in fact guilty of the charge. The evidence shows that the petitioner, who faced the possibility of another rape charge if he did not plead, made the informed decision to accept the State's offer after fully discussing the issue with counsel. We cannot conclude that the petitioner's guilty plea was anything

other than knowingly and voluntarily entered.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the court's denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE